**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 08-00521 SBA |
| Plaintiff, | **ORDER** |
| v. | [Docket No. 26] |
| FERNANDO GUZMAN, | |
| Defendant. | |

## INTRODUCTION

Before the Court are Defendant's "Motion to Disclose the Informant's Identity and any *Giglio* and *Brady* information re: Informant" [Docket No. 26], the Government's Opposition [Docket No. 29], Defendant's Reply [Docket No. 34] and the Government's Sur-reply [Docket No. 39]. For the reasons discussed below, the Court DENIES the motion without prejudice.

## BACKGROUND

In an eight-count indictment, the 19 year-old defendant is charged with selling heroin and methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 846. All the transactions in the indictment occurred between April 22 and June 3, 2008, and the charged sales were made to an undercover DEA agent, Agent Sanchez, who used the alias "Leo Fernando." [Motion pp. 2-3].

Guzman contends he began selling drugs to the undercover agent at the instigation of a man known to him as "Miguel," who worked at a bakery where Guzman hoped to get a job. According to Guzman, he filled out a job application at the bakery and gave it to Miguel, who called him up a couple of days later and suggested they meet. At the meeting, Miguel asked Guzman to get him some cocaine, which Guzman did. Guzman claims he thought getting the cocaine for Miguel would help him get hired at the bakery. [Docket No. 27, Decl. Guzman, ¶¶ 1-4].

The next drug sale, according to Guzman, occurred when Miguel asked him for heroin and gave him the money to buy it. [Decl. Guzman ¶ 4]. When Guzman returned with the heroin, Miguel introduced Guzman to Agent Sanchez, and told Guzman that the heroin was for Sanchez. [Id.]

After that, the only people physically present for each of the charged transactions were Guzman and Agent Sanchez. Guzman, however, attests that Miguel remained involved in the criminal activity because he arranged the deals between the defendant and Agent Sanchez, and told Guzman the amount of drugs requested, the price and where the deal would take place.[1] On one occasion, according to Guzman, Miguel even called Guzman while he was with Agent Sanchez.[2] [Decl. Guzman ¶5; Suppt'l Guzman Decl. ¶10; Packel Decl. Ex. 1, transcript].

In sharp contrast, Agent Sanchez attests the informant was not actively involved in the deals he had with Guzman, and that Guzman's sworn declarations are untrue. [Docket No. 39, Supp'tl Decl. Sanchez ¶6]. In his first unsworn declaration, Agent Sanchez recounts that he was introduced to Guzman – who went by the name "Chester" – by a third-party and that the defendant frequently called the agent to ask whether he needed more drugs and to arrange the next buy date. After the agent was introduced to Guzman by the third-party, all contacts and communications were made between the defendant and the agent directly. [Docket No. 30, Decl. Sanchez ¶¶ 4-5].

In a second sworn declaration, Agent Sanchez attests the informant not only was *not* in charge of the controlled drug buys, but he was not even directly involved beyond making the introduction between the agent and the defendant. [Suppt'l Decl. Sanchez ¶ 3-4].

The defendant explains he is "exploring an entrapment defense." [Motion at 2]. He believes that continuous and numerous telephone calls from Miguel to Guzman over a short period of time is significant to demonstrate that Miguel entrapped the defendant, in part, through constant telephone

---

[1] Guzman's theory is that "the charged transactions with Agent Sanchez flowed directly from [Guzman's] dealings with Miguel" and he supports his theory with an excerpt from an audio recording that was made during the April 22, 2008, transaction, for which Guzman is charged. [Reply at 4]. The subject of the exchange between the undercover agent and the defendant appears to be a comparison of the present quantity of drugs for sale and a previous quantity, which may be the heroin that Guzman procured at Miguel's request but that Miguel told him was for Leo Sanchez.
   Sanchez asks Guzman: "So, this is a little more . . . *than the other*, right?"
   Guzman responds: "No, its all . . . this is 125 grams and *last time* . . ." [Docket No. 35, Packel Decl., Ex. 2].

[2] Guzman introduces an excerpt from a transcript of an audio recording of the June 3, 2008, controlled purchase to demonstrate that Guzman received a phone call while he was with Agent Sanchez. The transcript indicates that a male voice, allegedly Guzman, spoke with a caller and that when a different male voice, allegedly Agent Sanchez, asked "what's up," the defendant allegedly said that "Miguel" had called

2

1 calls and pressure. At this juncture, there is no evidence before the Court of constant telephone
2 calls and pressure from Miguel during the period of the charged offenses.
3   Guzman asks the Court to order the Government to immediately disclose the name and
4 location of the confidential informant, as well as the informant's communications with the
5 Government. He further requests the Court order the confidential informant produced for an
6 interview.[3]
7   In addition, pursuant to a *Brady* motion, Guzman requests 23 items which purportedly shed
8 light on the credibility of the informant and whether he was acting as a government agent when he
9 first contacted the defendant. The defendant alleges the material either is in the possession of the
10 government or can be obtained by the government. [Motion at 10-12].
11   The Government indicates that no informant will be called in the prosecution's case-in-chief
12 in a potential jury trial. [Opp'n at 1]. No trial date has been set.

## LEGAL STANDARD

### I.   Disclosure of Confidential Informant

15   The government has a limited privilege to withhold the identity of a confidential informant.
16 *Roviaro v. United States*, 353 U.S. 53, 59 (1957); *United States v. Sai Keung Wong*, 886 F.2d 252,
17 255 (9th Cir.1989). That privilege must give way where the disclosure of the identity or contents of
18 a communication "is relevant and helpful to the defense of an accused, or is essential to a fair
19 determination of a cause." *Roviaro*, 353 U.S. at 60-61; *Sai Keung Wong*, 886 F.2d at 255.
20   There is no fixed rule with respect to disclosure and the trial court "must balance the public
21 interest in protecting the flow of information against the individual's right to prepare his defense.
22 Whether a proper balance renders nondisclosure erroneous must depend on the particular
23 circumstances of each case, taking into consideration the crime charged, the possible defenses, the

---

[3]Even if Guzman is entitled to learn the identity of the confidential informant, he is not entitled to have the informant produced in advance of trial. *See United States v. Taren-Palma*, 997 F.2d 525, 534 (9th Cir. 1993) (per curiam); *United States v. Bonilla*, 615 F.2d 1262, 1264 (9th Cir. 1980) (per curiam); *United States v. Kong*, 55 Fed. Appx. 469, 469 (9th Cir. 2003) (unpublished); *United States v. Maroun*, 930 F.2d 30, at *7 (9th Cir. 1991) (unpublished) ("A defendant is entitled to learn the identity of an informer if the informant is a percipient witness, but he is not entitled to have the informant produced in advance of trial").

3

possible significance of the informer's testimony, and other relevant factors." *U.S. v. Williams*, 898 F.2d 1400, 1402 (9th Cir. 1990).

In order to balance the interests of the individual and society, the court may examine three factors: (1) the degree of the informant's involvement in the criminal activity; (2) the relationship between the defendant's asserted defense and the likely testimony of the informant; and (3) the government's interest in protecting the safety of the informant. *Sai Keung Wong*, 886 F.2d at 256; *United States v. Gonzalo Beltran*, 915 F.2d 487, 489 (9th Cir. 1990).

Defendant bears the burden of demonstrating a need for disclosure of the identity of a confidential informant, and mere suspicion that information will prove helpful will not suffice. *Williams*, 898 F.2d at 1401. If a minimum threshold showing is made that disclosure would bear on at least one defense, an *in camera* hearing is justified. *See United States v. Spires*, 3 F.3d 1234, 1238 (9th Cir. 1993).

**II.     Disclosures Pursuant to *Brady*.**

*Brady/Giglio* material is any exculpatory evidence which is material to either guilt or punishment, including evidence that may have an impact on the credibility of a witness. The Government has a constitutional obligation to disclose such material, even though Fed. Rule Crim. P 16(b) does not require it. *Brady v. Maryland*, 373 U.S. 83 (1963); *Giglio v. United States*, 405 U.S. 150 (1972). Impeachment evidence also falls within the *Brady* rule. *United States v. Bagley*, 473 U.S. 667, 676 (1985)(rejecting any such distinction between impeachment evidence and exculpatory evidence based on the Supreme Court's holding in *Giglio*).

In *Strickler v. Greene*, the Supreme Court identified the components of a *Brady* violation: "the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." 527 U.S. 263, 281-82 (1999).

**ANALYSIS**

**I.     Disclosure of the Informant.**

In order to balance the interests of the individual and society with regard to disclosure of the identity of a confidential informant, as articulated by *Roviaro* and caselaw in the Ninth Circuit, the

4

court may examine three factors: (1) the degree of the informant's involvement in the criminal activity; (2) the relationship between the defendant's asserted defense and the likely testimony of the informant; and (3) the government's interest in protecting the safety of the informant. *Sai Keung Wong*, 886 F.2d at 256; *Beltran*, 915 F.2d at 489.

**A.     The degree of the informant's involvement in the criminal activity.**

A third party introduced Guzman to Agent Sanchez. Guzman identifies the third party as a man he knows as "Miguel" who works at a bakery where Guzman would like to work, and he presumes Miguel is a confidential informant for the Government. Guzman met Agent Sanchez for the first time through Miguel. Guzman declares Miguel asked him for heroin, gave him the money to buy it, and when Guzman returned with the heroin, Miguel introduced him to Sanchez and told him that Sanchez wanted the drugs. It appears undisputed that after the initial introduction, the third party was not present at any subsequent charged transaction.

The Government strenuously objects to disclosure of the informant's identity because the informant was not involved in the criminal activity; he merely introduced the defendant to the agent. More importantly, the informant was not a percipient witness to the charged transactions because he was never present at any of the transactions for which Guzman is charged.

The Government is correct that most of the cases in the Ninth Circuit where the court orders disclosure turn on the crucial fact that the informant was the sole witness and participant in the criminal activity.

First of all, in the *Roviaro* case itself, the Court determined that the identity of the informant was relevant and helpful to the defense of the accused because the informant helped set up the commission of the crime and was the only person present at its occurrence. The government witnesses at trial were police officers who observed the transaction, unseen, especially one police officer who was hiding in the trunk of the informer's car while the drug deal occurred. The Court emphasized that the informer was the only witness in a position to amplify or contradict the testimony of government witnesses. *Roviaro*, 353 U.S. at 64-65. Thus, *Roviaro* instructs that where the informant is a participant and sole witness, the privilege of withholding the informant's identity should give way.

1    Likewise, in the following cases, the court found that disclosure of the informant was not
2 warranted because the informant was not a percipient witness to any of the crimes charged. In
3 *United States v. Williams*, 898 F.2d 1400 (9th Cir. 1990), the defendant was operating a crack house
4 when police searched it and arrested him for possession and distribution of cocaine.  A confidential
5 informant who had purchased cocaine from the defendant provided the information used to get the
6 search warrant.  The defendant was not charged for the sale of cocaine to the informant.  The court
7 did not permit disclosure of the identity of the informant because (1) the defendant was not charged
8 on the basis of his drug transaction with the confidential informant (2)  the informant was not
9 present at the charged transactions and (3) the information from the informant was used to get a
10 search warrant that led to the arrest and not to charge the defendant.

11    In *United States v. Johnson*, 886 F.2d 1120, 1122 (9th Cir. 1989), a confidential informant
12 had been given "bait money" by the police, driven to an alleged crack house where he purchased
13 cocaine.  Later in the day, law enforcement searched the home and found drugs and the "bait
14 money" and charged the defendant.  The Court did not order disclosure of the informant because the
15 mere suspicion that the informant had relevant information does not warrant disclosure and the
16 defendant had not been charged based on the transaction with the informant.

17    Finally, in *United States v. Sai Keung Wong,* 886 F.2d 252, 256 (9th Cir. 1989), multiple
18 defendants charged with heroin trafficking and arrested at Los Angeles International airport raised
19 an entrapment defense and wanted the identity of an informant disclosed on the belief that the
20 informant would be helpful in establishing the government had acted outrageously.  After the court
21 conducted a telephonic *in camera* interview with the informant, it concluded that there was no
22 evidence to suggest that the informant was the only percipient witness to any critical event, as in
23 *Roviaro*.  The Court determined that the informant's testimony was not relevant or helpful to the
24 defense for two reasons: (1) it would have been cumulative or insignificant and (2) the government
25 largely avoided reference to the informant's activities throughout its case, relying instead on
26 evidence relating to the defendants' activities at other locations where they were being observed by
27 DEA agents.
28    Guzman however attests that in spite of Miguel's physical absence from the charged

transactions, he nevertheless was actively involved because Miguel called him before, during and after sales, and discussed the "specifics of how much, what price, and where to meet." On one specific occasion, Guzman alleges that Miguel even called him to complain that the drugs he gave to "Leo" were too watery. And there is recorded evidence that Guzman claimed to take a telephone call from someone named Miguel while he was with Agent Sanchez.

In support of his argument that an informant need not be a percipient witness to warrant disclosure of his identity, Guzman cites *U.S. v. DiBlasio*, 932 F.3d 1038 (2nd Cir. 1991) and *U.S. v. Pesaturo*, 519 F.Supp.2d 177 (D. Mass. 2007). Both of these cases can be distinguished from Guzman's for two reasons: (1) disclosure in those cases was required because the informant's testimony related to the affirmative defense of entrapment and not because the testimony would have been relevant or useful to defending against the offense conduct, and (2) the defendant had raised more than a bare claim of entrapment. Because the cases relate more appropriately to the second *Roviaro* factor, they will be considered in the next section.

In contrast to Guzman's contention that Miguel was involved in the criminal activity even though he was not present for it, the agent's declarations state a situation altogether to the contrary. According to Agent Sanchez, the informant "was not made aware at any time as to the dates, times, locations, type of drugs or amount of drugs that would be involved" in his transactions with Guzman. The informant had only one responsibility – to introduce the agent to known drug traffickers. Agent Sanchez does not dispute that Miguel continued to have contact with Guzman; however he swears that Miguel had no involvement in Guzman's criminal activity. For instance, the agent suggests that Miguel could have remained in contact with Guzman for the simple reason that because they were already acquainted, it would have been awkward or suspicious for Miguel to cut off contact with Guzman after introducing him to the agent. [Sanchez Suppt'l Decl. ¶5]. Guzman himself, in two sworn statements, points out that he badly wanted a job at the bakery where Miguel worked, so it is also possible that Guzman kept in contact with Miguel because he thought he could help him get work.

It is unclear how the informant's likely testimony is relevant or helpful to defending against the charges that he sold drugs on several separate occasions. Because no third party was present at

7

the transactions, the only witnesses to the transactions are the agent and the defendant. Guzman has failed to demonstrate that this factor weighs in favor of disclosing the identity of the confidential informant.

**B.     The relationship between the defendant's asserted defense and the likely testimony of the informant.**

Guzman is "exploring an entrapment defense." Entrapment has two elements: (1) government inducement of the crime and (2) the absence of predisposition on the part of the defendant. *See United States v. Sandoval-Mendoza*, 472 F.3d 645, 648 (9th Cir. 2006); *United States v. Ross*, 372 F.3d 1097, 1108 (9th Cir. 2004); *United States v. Gurolla*, 333 F.3d 944, 951 (9th Cir. 2003). Inducement is any government conduct creating a substantial risk that an otherwise law-abiding citizen would commit an offense. *Sandoval-Mendoza*, 472 F.3d at 648; *United States v. Poehlman*, 217 F.3d 692, 698 (9th Cir. 2000). In order to prove entrapment as a matter of law, a defendant must point to undisputed evidence making it patently clear that an otherwise innocent person was induced to commit the illegal act by trickery, persuasion, or fraud of a government agent. *Sandoval-Mendoza*, 472 F.3d at 649..

With respect to the second element, five factors are relevant to the predisposition analysis: "(1) the character and reputation of the defendant; (2) whether the government made the initial suggestion of criminal activity; (3) whether the defendant engaged in the activity for profit; (4) whether the defendant showed any reluctance; and (5) the nature of the government's inducement." *United States v. Martinez*, 122 F.3d 1161, 1163 (9th Cir. 1997). Of these, the defendant's reluctance is the most important. *Id*.; *United States v. Mendoza-Prado*, 314 F.3d 1099, 1102 (9th Cir. 2002) (per curiam).

The defendant believes that confirmation of the identity of the informant is both relevant and material to preparing his entrapment defense, as is the ability to interview the informant, and any discovery pertaining to the informant's contacts with the Government and his credibility. [Motion at 10].

The Fifth Circuit's discussion of the relationship between entrapment and the disclosure of a confidential informant in *United States. v. Gonzales*, 606 F.2d 70, 75 (5th Cir. 1979) is helpful to

analyzing the *Roviaro* balancing test. In *Gonzales*, an undercover agent made a number of heroin purchases from the defendant, after being introduced to him by two confidential informants. Only one of the informants was present at the next meeting, and then he too dropped out of sight while the defendant continued selling heroin to the agent. The defendant wanted the identities of the informants disclosed on the theory that the informants and the agent entrapped him.

The Court states: "Entrapment is an affirmative defense for which the defendant must present some evidence of entrapment before the issue can be properly raised. To this end, the defendant must produce some evidence, but more than a scintilla, that (he was) induced to commit the offense. This initial burden on the defendant to produce some evidence of entrapment has important ramifications for disclosure of an informant's identity under *Roviaro*. Unless some evidence of entrapment is adduced by the defendant, thereby properly raising the defense, disclosure would be unjustifiable. It is defendant's responsibility to make an initial proffer on his entrapment defense before *Roviaro*'s balancing process could be invoked. Disclosure based upon mere speculation as to the relevancy of an informant's testimony is inappropriate given defendant's burden of production." *United States v. Gonzales*, 606 F.2d 70, 75 (5th Cir. 1979) (internal citations omitted).

Guzman alleges the following facts *suggest* an entrapment defense. First, the Government induced the crime because: (1) the government authorized and was aware that the informant was introducing Guzman to the agent in order to sell him drugs; (2) the informant told Guzman the heroin the informant asked for was really for Sanchez. Second, Guzman was not predisposed to commit the crime prior to being introduced to Agent Sanchez because he "has no prior criminal record and was only 18 at the time of the charged offenses." [Guzman Supp. Decl. ¶4].

The government has conceded that it used the informant for the purpose of making the introduction. Creating an opportunity to sell drugs is not inducement to commit a crime. "It is well settled that the fact that officers or employees of the Government merely afford opportunities or facilities for the commission of the offense does not defeat the prosecution. Artifice and stratagem may be employed to catch those engaged in criminal enterprises." *Jacobson v. U.S.*, 503 U.S. 540, 548-549 (1992). In addition, even if Miguel's testimony corroborates Guzman's statement that the heroin purchase that Guzman believed was for Miguel was really intended for the agent, this

1  transaction is not charged in the indictment and does not appear to add to the Court's understanding
2  of whether Guzman was impermissibly induced to commit a crime. By Guzman's own admission, he
3  was hoping that Miguel might help him get a job at the bakery where he worked, but Guzman never
4  states that he was promised a job as a quid pro quo for selling him drugs.  Nor does Guzman state
5  that he was threatened that he would lose a job opportunity if he did not sell drugs.  The defendant
6  has not raised evidence to support the first element of an entrapment defense.

7  　　　　As for the second element, the defendant's assertions about his age and lack of criminal
8  record are not evidence of lack of predisposition because, for example, they do not demonstrate
9  anything about the defendant's character.  In *U.S. v. Skarie*, a defendant charged with selling
10 narcotics raised an entrapment defense and the court found that with regard to her character, there
11 was evidence of defendant's  anti-drug stance, the fact that she had thrown a friend out of her house
12 in part because he was using drugs, and she opened her home to several recovering drug addicts.
13 *U.S. v. Skarie,* 971 F.2d 317, 320 (9th Cir. 1992).

14 　　　　Guzman relies on *United States v. Pesaturo*, in which the defendant's discovery motion to
15 disclose the identity of a non-testifying informant was granted.  However, the similarities between
16 the two cases end there.  In *Pesaturo*, the defendant supported his entrapment defense with a
17 detailed affidavit of specific conduct by the informant.  The defendant had started selling drugs to an
18 undercover agent who called him up, said he knew the informant, and that he had heard that the
19 defendant had a supply of Oxycontin and was looking for customers.  The informant not only did not
20 make the initial introduction in person, he was never present for any drug transactions.  However,
21 the defendant testified the informant suggested he sell drugs to the agent because it would help the
22 informant's family out while the informant was in prison. The defendant testified he refused at first,
23 especially because "he was no longer in the business," but the informant pleaded with him to do it.
24 The pleading turned to guilt trips when the informant said that his own child (and defendant's
25 godchild) might get hurt if the defendant did not do what the informant asked him to do.  The guilt
26 trips turned to what the defendant perceived as a threat.  In addition, the agent was a big burly man
27 and the defendant felt intimidated.  519 F.Supp.2d at 182-183.
28 　　　　The court found that in light of the entrapment defense asserted, the identity of the informant

was clearly relevant and helpful to the defense, and the *Roviaro* balancing test favored disclosure. *Id*. at 186. The court also held that defendant was entitled to debriefings of the informant and information about the informant's cooperation with the government under *Brady*.

Guzman also cites to *United States v. DiBlasio* to support his motion. In *DiBlasio*, the defendant was a medical doctor who was introduced to undercover agents by "Scotty," someone he believed made his living selling cocaine and whom he had known for a year because they did drugs together. "Scotty" asked the defendant to help him out by providing cocaine to some people whom "Scotty" owed and the defendant testified at trial that he refused continuously for five months. However, he agreed to help "Scotty" and pose as a drug dealer to "Scotty's" customers after "Scotty" told the defendant that the dealers had threatened his life if he did not provide them with drugs. "Scotty" introduced the undercover agent to the defendant and was not in the room with them when the defendant sold the agent drugs. "Scotty" was present for the second drug sale but absent for all subsequent sales. The defendant testified that even after "Scotty" disappeared (which he said they both should do to be safe), he continued to sell drugs out of fear and until he could figure out how to disappear too. The Court found that disclosure of "Scotty's" identity and whereabouts was proper because the testimony was material to the affirmative defense of entrapment. 932 F.3d at 1042.

A critical distinguishing feature between the *DiBlasio* entrapment defense and the instant case is that *DiBlasio* offered evidence that he was reluctant to engage in criminal activity, and reluctance is a factor the Court considers in an entrapment defense. In the absence of facts that state an entrapment defense, the second *Roviaro* factor does not weigh in favor of ordering the identity and location of the informant to be disclosed.

**C.   Safety Concerns for the Informant**.

The defendant argues that because he has no prior criminal history and there are no allegations of violence in the charged offense, he personally poses no danger to the informant which means the government's interest in nondisclosure is minimal compared to his interest in preparing his defense. [Motion at 5]. The government has alleged no specific facts that the informant's safety is threatened by Guzman, and argues that "the government's interest in protecting informants is

11

evident." [Opp'n at 5]. The Government cites the dissent in *Roviaro* in which Justice Clark sounds this alarm: "Once an informant is known the drug traffickers are quick to retaliate. Dead men tell no tales. The old penalty of tongue removal, once visited upon the informer Larunda, has been found obsolete." *Roviaro v. Unite States*, 353 U.S. 53, 67 (1957).

In its sur-reply brief, the Government further argues that even though Guzman says he has no reason to hurt the confidential informant once he is certain of his identity, this is disingenuous and "utterly irresponsible." In the Government's experience, once a person is confirmed as a confidential informant, he is in more danger than ever, not just from the defendant but also from relatives and friends, and that is why the Government makes their protection a priority. [Sur-reply at 4].

Because the burden is on the defendant, he adduces no evidence on this factor that supports granting his motion.

In consideration of the above factors, the Court finds that the *Roviaro* balancing test does not weigh in favor of disclosure and DENIES the defendant's motion.

**II.     *Brady* Disclosure of Information.**

Defendant bases his motion on the fact that he is likely to present a defense of entrapment at trial and any material on the crucial issues of whether Guzman was predisposed to sell drugs and what inducement was offered can come only from him or the informant. If informant testifies, his credibility is highly important, and *Brady/Giglio* materials include those which are material to the credibility of the informant.

This is a correct statement of the law. The only trouble is that defendant provides a list of 23 items on pages 10-12 of the Motion, and the Government responds succinctly that it is not aware of any exculpatory evidence at this time and if it becomes aware of any such evidence, it will provide it to the defense. [Gov'ts Sur-reply at 6]. The Government does not oppose specific requested items, and it would be logical for it to make specific arguments for materials it believes it need not disclose if it had them or could procure them. Defendant also does not argue how the various materials relate to the issue of credibility, and arguably requests materials that may not even apply to the informant. For instance, items 22(a)-(k) relate to statements made by the informant from his arrest through

sentencing, but there is no suggestion that the informant has been arrested in connection with this crime and/or sentenced.

In the absence of specific argument by either party, and the Government's assertion that it has no exculpatory materials to disclose, the Court DENIES the *Brady* motion without prejudice.

## CONCLUSION

For the foregoing reasons, the Defendant's Motion to Disclose the Informant's Identity and *Giglio* and *Brady* information re: Informant is DENIED.

IT IS SO ORDERED.

DATED:3/17/09

Saundra Brown Armstrong

United States District Judge